UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20-cr-00017-TWP-VTW |
| CHRISTOPHER HILL, | ) ) ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
AND DENYING MOTION TO COMPEL**

This matter is before the Court on a Motion to Suppress Evidence and Request for Evidentiary Hearing (Filing No. 26), and Motion to Compel the Production of all JPD K9 Deployment Detail Reports (Filing No. 27), filed by Defendant Christopher Hill ("Hill"). Hill is charged in an Indictment with Possession with the Intent to Distribute Controlled Substances in violation of 21 U.S.C § 841(a)(1), (b)(1)(A)(viii). (Filing No. 10.) He argues that excessive force was used during his November 5, 2020 arrest in violation of his Fourth Amendment rights which justifies the suppression of evidence found during the search. He requests an evidentiary hearing to present evidence of the "unreasonable use and deployment of deadly force" against him (Filing No. 26 at 5). Hill also seeks an order compelling the Government to produce all Jeffersonville Police Department ("JPD") K9 Deployment Detail Reports for the last three years as potentially favorable evidence in support of the motion to suppress evidence as a result of the use of excessive force by the JPD. For the following reasons, Hill's Motions are **denied.**

### I.   FINDINGS OF FACT

There are no factual disputes and for the most part, the relevant facts are corroborated by a video recording of the events.

On November 5, 2020, officers from the JPD and agents of the Federal Bureau of Investigation ("FBI"), with the assistance of a confidential informant, placed a telephone call to Hill for the purpose of setting up a controlled buy of methamphetamine from Hill. Although Hill resided in Kentucky, the "controlled buy" of the methamphetamine was at a meeting location in the vicinity of Jeffersonville, Indiana. The FBI and JPD officers recorded Hill and a confidential informant discussing the informant's request to purchase four ounces of methamphetamine from Hill (Filing No. 36 at 2).

During their investigation, JPD and FBI officers received information that Hill was "considered armed and dangerous" and would be in possession of a "handgun and bullet proof vest during his arrest." (Filing No. 36-2 at 3; Filing No. 36-3 at 2.) Officers were aware that Hill was subject to arrest warrants issued in Louisville, Kentucky, for several felony offenses, including Possession of a Handgun by Convicted Felon, Wanton Endangerment (1st Degree), Trafficking in Controlled Substance (1st Degree), and Assault (4th Degree). (Filing No. 36 at 2). Hill was also suspected of "having fired weapons at other persons in the past," and officers anticipated that he would "resist law enforcement if possible." (Filing No. 36-1 at 2.) Based on this information, JPD officers planned to make a high-risk felony traffic stop to arrest Hill that evening.

At approximately 7:44 p.m., JPD officers and FBI agents effectuated the planned high-risk felony traffic stop on Hill in Jeffersonville, Indiana. (Filing No. 26 at 1; Filing No. 36 at 2–3). As officers effectuated the traffic stop, JPD Sergeant Denver Leverett ("Sergeant Leverett") loudly ordered Hill to "step out of the vehicle, "place his hands up," and "face away from officers." (Filing No. 36-2 at 3.) Sergeant Leverett, the JPD Commander of the K9 Unit, was accompanied by his K9 partner, Flex ("K9 Flex") (Filing No. 36-2 at 1, 2.) Sergeant Leverett had K9 Flex "under physical control" while he was giving Hill commands (Filing No. 26-1 at 2). K9 Flex can be heard

barking ferociously on the video. After a few seconds, Hill complied and exited the vehicle as requested, however, he was "not fully compliant with the officers [sic] commands." (Filing No. 26 at 2.) The video displays that Hill did not immediately put his hands up, but he "did not attempt to flee." *Id*. Sergeant Leverett gave Hill "numerous" commands to surrender peacefully, but Hill did not fully to comply. (Filing No. 26-1 at 2.) Hill can be seen making "furtive movements" with his hands while standing outside of his vehicle, like dropping his hands "towards his waistband," "concealing them," and reaching "toward the vehicle"–which the officers perceived as signaling someone else inside the car. (Filing No. 36 at 3.) The JPD and FBI officers were concerned because they did not know who else was in Hill's car and whether this person (or persons) were armed and because they were acting on previous information of Hill's possession and past use of firearms. *Id.*

Aaron Olson, a JPD Special Weapons and Tactics ("SWAT") team member fired one "less-lethal 40mm munition" at Hill, which struck him in the lower left leg, causing Hill to drop to the ground (Filing No. 26 at 2; Filing No. 36-2 at 4). Sergeant Leverett then released K9 Flex to assist in apprehending Hill (Filing No. 26-1 at 2)[1]. K9 Flex proceeded to "bite and hold" Hill in the upper right arm. (Filing No. 36-2 at 4.) K9 Flex "bit and chewed" Hill on the upper right arm "near his chest and face." (Filing No. 26 at 2.)

The officers and SWAT team members then converged on Hill and attempted to place him into custody. It is dark outside and the scene is chaotic. Officers yelled at Hill to place his hands behind his back. Hill can be seen withering in pain and heard screaming "get the dog off of me".

---

[1] Flex is a dual purpose, certified police K9 trained in both patrol and narcotics detection. (Filing No. 36-2.) Flex is certified in obedience, area search, tracking, article search, building search, and aggression control. *Id*. Flex is also trained in assisting with physical apprehension of suspects as well as the neutralization of threats to law enforcement. *Id*. Flex is trained as a "bite and hold" K9, targeting center of mass or whatever body part is presented first, and will physically subdue a noncompliant suspect until compliance is gained or until law enforcement can gain a tactical advantage and avoid all threats posed. *Id*. Flex will release his physical hold once compliance is achieved through verbal command only. *Id.*

3

Hill did not immediately place his hands behind his back.  During the officers' attempt to subdue Hill, K9 Flex maintained Hill's upper right arm in a "bite and hold".  Sergeant Leverett issued a release command, and K9 Flex let Hill go, while Sergeant Leverett kept K9 Flex close for the remainder of the arrest. (Filing No. 36-2 at 4.)  Hill was handcuffed and treated at the scene by emergency medical services. His injuries were photographed by Sergeant Leverett. Hill was subsequently transported to the Clark County emergency room for his injuries. (Filing No. 26 at 2).

A female passenger was removed from Hill's vehicle by the officers at the scene "without incident and detained." (Filing No. 1 at 5.) A JPD officer began "locating and documenting injuries," and conducted a search of Hill's person "incident to arrest." (Filing No. 36 at 5.) During this search, "two baggies containing [an] apparent crystalline substance" fell out of Hill's clothing "in plain view" of the officers. *Id.* The baggies weighed "approximately four ounces and field tested presumptively positive for the presence of methamphetamine." *Id.* The officers then conducted a search of Hill's vehicle and recovered, among other things, "over $5,000 in cash, apparent marijuana, cell phones," and a "black ballistic-style vest without armored plates or fabric." *Id*. A subsequent search—conducted pursuant to a search warrant—of Hill's residence yielded a "Smith & Wesson 9mm handgun," and "suspected methamphetamine and fentanyl-laced heroin." *Id*. at 5-6.

Hill moves to suppress all evidence "subsequent to and as a result of the unreasonable search and seizure" and he requests an evidentiary hearing. (Filing No. 26 at 1, 5.)  He also asks that the Court compel the production of all JPD K9 Deployment Detail Reports for the last three years. (Filing No. 27.)  On April 29, 2021, the Government responded in opposition to both Motions. (Filing No. 36; Filing No. 38.)  Hill has not filed a reply and the time to do so has expired.

## II.     CONCLUSIONS OF LAW

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Fourth Amendment prohibits a warrantless search unless the search falls under one of the recognized exceptions to the warrant requirement.  *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985).  If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional.  *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).  When an officer effectuates a traffic stop and detains a person, no matter the length of time, it constitutes a "seizure" of "persons" under the Fourth Amendment, and thus must be reasonable.  *Whren v. United States*, 517 U.S. 806, 810 (1996).

Regarding requests for evidentiary hearings before the Court decides a motion to suppress, "[i]t is well established that [e]videntiary hearings are not required as a matter of course." *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018) (internal quotation marks and citations omitted).  "A defendant seeking an evidentiary hearing on a motion to suppress must provide sufficient information 'to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.'" *United States v. Juarez*, 454 F.3d 717, 719–20 (7th Cir. 2006) (quoting *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir.1998)).

To prevail on a motion to suppress, "[a] defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality." *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). The Seventh Circuit holds "[r]eliance on vague, conclusory allegations is insufficient.  A defendant must present 'definite, specific, detailed, and nonconjectural' facts that

5

justify relief before a district court will grant a suppression hearing." *Id*. (quoting *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir.1986)).

## III.   DISCUSSION

The Court will first discuss the Motion to Compel before addressing the substantive suppression motion.

### A.   Motion to Compel

Hill asks the Court to enter an order compelling the Government to produce all JPD K9 Deployment Detail Reports for the preceding three years. He contends that these records are necessary to review and assess the deployment practices of the JPD to support his Motion to Suppress. ([Filing No. 26](#).) Hill maintains these records are "potentially material and favorable evidence" and requests production by the Government in advance of any ruling or evidentiary hearing on his Motion to Suppress. *Id.*

Rule 16 of the Federal Rules of Criminal Procedure regulates discovery by the defendant of evidence in possession of the prosecution, and discovery by the prosecution of evidence in possession of the defendant. The rule permits the defendant to move the court to discover certain material. In particular,

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Federal Rule of Criminal Procedure 16(E).

The Government responds that "those records, to the extent they exist, are not in the custody and control of the United States. Nor do they fall within any category of information

6

encompassed by Rule 16." (Filing No. 38). The Government also contends that the K9 Deployment Detail Reports for the last three years for all K9s, not just those related to Sergeant Leverett and his K9 Flex, are not material to the resolution of the Hill's Motion to Suppress. *Id.*

Despite Hill's contention that the extensive records requested may be "potentially" favorable and material to his Motion to Suppress, he does not demonstrate how these records would significantly alter the facts in his favor beyond his conjecture. The Court agrees with the Government that Hill's request for all the JPD K9 Deployment Detail Reports from the previous three years are not material to the resolution of his Motion to Suppress. *See United States v. Baker*, 453 F.3d 419, 425 (7th Cir. 2006) ("[T]o satisfy the requirement of [Rule 16] materiality a defendant must demonstrate some indication that the pretrial disclosure of the disputed evidence would enable defendant significantly to alter the quantum of proof in his or her favor.") (internal quotation marks and citations omitted). Accordingly, Hill's Motion to Compel the Government to provide three years of JPD K9 Deployment Detail Reports is **denied**.

**B.** **Evidentiary Hearing Request**

District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion. *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). The Seventh Circuit has held that to be granted an evidentiary hearing, the "allegations and moving papers must be 'sufficiently definite, specific, non-conjectural and detailed.'" *Id*. (quoting *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007)). This places a considerable burden on a defendant seeking an evidentiary hearing and the Seventh Circuit holds that a defendant "bears the burden of both identifying a definite disputed factual issue, and demonstrating its materiality." *Id*.

Hill's request and basis for an evidentiary hearing is contained merely within the closing sentence of his Motion, wherein he asserts that his case warrants a hearing to "present evidence of the [November 5, 2020 traffic stop and arrest] and the unreasonable use and deployment of deadly force (i.e. k9 Flex) effecting the seizure and arrest." (Filing No. 26 at 5.)

In response, the Government argues that Hill has "presented no substantial claim," and there exists "no dispute of material fact that this Court must resolve." (Filing No. 36 at 15.) The Government points out that Hill does not directly raise the argument that "the police acted unreasonably in employing a K9 in his arrest" in a way that would "independently give rise to a *per se* constitutional violation." (Filing No. 36 at 11–12 (emphasis in original).)

The Court agrees that Hill has not meet his burden to be granted an evidentiary hearing. Hill does not sufficiently allege that there are disputed issues of material fact that will affect the outcome of the motion. *See United States v. Juarez*, 454 F.3d 717, 719–20 (7th Cir. 2006) ("A defendant seeking an evidentiary hearing on a motion to suppress must provide sufficient information to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.") (internal quotation marks and citations omitted). He fails to identify a definite disputed factual issue, and he has not demonstrated the materiality of a disputed factual issue. *See McGaughy*, 485 F.3d at 969 ("[P]recedent places the onus on a defendant seeking an evidentiary hearing to specifically . . . allege a definite disputed factual issue, and to demonstrate its materiality.") (internal quotation marks and citations omitted). Hill neither disputes the legality of the traffic stop nor that he was traveling to Jeffersonville to conduct a sale of the apparent methamphetamine in his possession.

Hill does not dispute that he failed to comply with the officer's commands to surrender without incident, precipitating the release of K9 Flex. He concedes in his factual statement that

8

he was "not fully compliant with the officers commands". ([Filing No. 26 at 2](#).) As part of his Motion to Suppress, Hill has attached the JPD "K-9 Deployment Detail Report" ("K9 Report") from the night of the traffic stop and arrest, written by Sergeant Leverett. ([Filing No. 26-1](#).) The K9 Report details that among Hill's outstanding warrants, which included "Trafficking in Controlled Substances," were warrants for "Possession of a Handgun by Convicted Felon," "Wanton Endangerment (1st Degree)," and "Assault (4th Degree)." *Id.*

More importantly, much of the information in the K9 Report is corroborated by video camera evidence. The video shows—as described in the K9 Report—the level of noncompliance Hill exhibited by making "furtive movements with his hands" after "numerous commands to exit the vehicle." *Id.* at 2. The K9 Report described how Sergeant Leverett "feared . . . Hill was planning to retrieve a handgun and escalate the situation based [on] the totality of the circumstances." *Id.* Hill does not dispute the contents of the K9 Report incorporated into his Motion to Suppress nor has he filed a reply in opposition to any of these facts.

Although Hill argues that the use of K9 Flex was unreasonable, his allegations lack specificity and detail regarding exactly how the use of K9 Flex was unreasonable or excessive during the arrest. Ultimately, Hill raises no discernable issue of material fact in his Motion that conflicts or is in dispute with the Government's version of events. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) ("[A] hearing is not required in the absence of such disputes."). Accordingly, no evidentiary hearing is required in this case, and the Court **denies** Hill's request.

C.      **Suppression under the Fourth Amendment**

Claims that law enforcement officials have used excessive force during an arrest, investigatory stop, or other seizure of a person are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

The Fourth Amendment's safeguard from "unreasonable searches and seizures" is supplemented by the judicially-created "exclusionary rule," which is meant to act as a "deterrent sanction that bars the prosecution from introducing evidence by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011). The use of the exclusionary rule is carefully considered and applied by the courts which have held that suppression of evidence "has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

In support of his Motion to Suppress, Hill asserts "the United States Supreme Court has never held that exclusion of evidence or suppression of evidence may not be the appropriate remedy for the use of excess force by law enforcement officers against citizens in effecting a seizure/arrest of that person." (Filing No. 26 at 4.) Hill appears to argue that because the Supreme Court has not conclusively barred the suppression of evidence as a remedy for claimants in excessive force cases, this Court should grant his Motion to Suppress. He also argues suppression of the evidence is warranted to "further the exclusionary rule's rationale of deterring police misconduct." *Id.* at 5. In response, the Government argues the facts of this case do not support the application of the exclusionary rule, "which requires illegal action by the police coupled with exploitation of that illegality." (Filing No. 36 at 8-9.)

While the video depicts a violent and aggressive arrest and apprehension of Hill, even relying on Hill's version of events as contained in his Motion, the Court does not find that the exclusionary rule applies. Hill's noncompliance with the instructions of the officers at the scene coupled with the nature of Hill's outstanding warrants, and information provided by the confidential informant, created a heightened risk of danger for the officers that made the release of K9 Flex reasonable to ensure Hill's surrender.

The Government next asserts that even if the use of K9 Flex in arresting Hill was unreasonable, it was not the "but-for cause of the discovery of the evidence against the defendant." *Id.* at 9. The Government cites the Seventh Circuit's decision in *United States v. Watson*, 558 F.3d 702 (7th Cir. 2009), to support its contention that no causal connection linked the deployment of K9 Flex and the search of Hill incident to arrest that revealed the apparent methamphetamine and contents of his vehicle. In *Watson*, officers made a traffic stop with their firearms drawn (based on a tip that Watson had possession of firearms) which unreasonably frightened Watson. A search of the vehicle revealed firearms which Watson sought to suppress based on excessive force. His motion was denied in part because the police did not obtain the evidence by pointing their guns at Watson, but by obtaining the consent of the driver. The Seventh Circuit held "there is no causal connection between the manner in which the police approached the defendant in this case and the search of the car that disclosed the weapons used in evidence against him." *Id.* at 705. That rationale applies here as well. The officers intended to arrest Hill from the outset, and during the arrest four ounces of apparent methamphetamine allegedly fell from his person. The Government persuasively argues that "*Watson* applies here and squarely forecloses the defendant's claim to suppression of evidence." (Filing No. 36 at 9.)

As for Hill's argument that suppression can be a viable remedy in this case because the Supreme Court has "never held that the exclusion or suppression of evidence may not be the appropriate remedy" in excessive force cases, the Government responds that this contention is "legally irrelevant" because it attempts to upend the Supreme Court's precedents that apply the exclusionary rule in "specific, narrow circumstances" and "no authority exists for suppression of evidence here." (Filing No. 36 at 10–11.) The Court agrees.

Hill again cites the Seventh Circuit's ruling in *Watson* in his Motion and concedes to that court's holding that the use of excessive force during an arrest is not a basis for suppressing evidence. *See* 558 F.3d at 705 ("We thus disagree . . . that the use of excessive force in the course of a search can require suppression of the evidence seized it.") (internal quotation marks and citations omitted). Hill then notes that after *Watson*, "there has been no appellate decision holding that the exclusionary rule can serve as a remedy for excessive force collateral to a search and seizure." ([Filing No. 26 at 5](Filing No. 26 at 5).)

Hill is not entitled to the suppression of evidence found during the search incident to his arrest. Hill does not challenge the validity of the traffic stop or even the search incident to his arrest. Instead, he argues the while it is true that the Supreme Court has not expressly foreclosed the possibility that the exclusionary rule may be used as a remedy in excessive force cases, that alone does not create a basis for suppressing the evidence here. Similarly, the ostensible lack of appellate decisions post-*Watson* addressing the remedial potential of the exclusionary rule in law enforcement excessive force cases does not create a vacuum of case law that this Court is obliged to fill.

Hill's contention that suppression is warranted here to "further the exclusionary rule's rationale of deterring police misconduct" is not supported by the facts of this case or controlling precedent. *Id.* at 5; *see Davis*, 564 U.S. at 238 ("[T]he deterrence benefits of exclusion var[y] with the culpability of the law enforcement conduct at issue . . . . When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs . . . . But when the police act with an objectively reasonable good-faith belief that their conduct is lawful or when their conduct involves

only simple, isolated negligence, deterrence rationale loses much of its force and exclusion cannot pay its way.") (internal quotation marks and citations omitted).

As noted above, the Court has relied on the facts given in Hill's Motion to Suppress and finds that the uncontested facts detailed in the K9 Report and corroborated by the body cam video, provide an objectively reasonable justification for the deployment of K9 Flex to apprehend the noncompliant Hill during his arrest. *See Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009) ("This does not mean, however, that the practice of deploying trained dogs to bite and hold suspects is unconstitutional *per se*; the situation might warrant the use of a dog that has been trained and that is under the control of the officer.") (emphasis in original). The use of K9 Flex– a "certified police K9" that is "certified in obedience" and "trained in assisting with physical apprehension of suspects"– was not unreasonable given the circumstances. (Filing No. 36 at 3.) And as argued by the Government, under the circumstances here, even had they used excessive force, Hill's remedy would be a suit for damages under 42 U.S.C. § 1983 (or state law) rather than the exclusion from his criminal trial of evidence that had been seized in an otherwise lawful search. *See also*, *Watson* 558 F.3d at 704. Accordingly the Motion to Suppress is **denied**.

## IV. CONCLUSION

As noted above, the video cam recording depicts a violent and aggressive apprehension for which Hill may pursue a claim of excessive force under 42 U.S.C. § 1983. However, for the reasons discussed above, he is not entitled to suppression of the evidence in his criminal case. The Court **DENIES** Hill's Motion to Suppress and Request for Evidentiary Hearing, (Filing No. 26) and Motion to Compel the Production of all JPD K9 Deployment Detail Reports, (Filing No. 27).

**SO ORDERED.**

Date: 6/14/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Larry D. Simon
SIMON LAW OFFICE
larrysimonlawoffice@gmail.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
william.mccoskey@usdoj.gov